Cite as 2025 Ark. App. 534

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-25-25

| | | |
|---|---|---|
| HOPE CHANTEL | | Opinion Delivered November 5, 2025 |
| | APPELLANT | APPEAL FROM GARLAND COUNTY CIRCUIT COURT [NO. 26DR-20-973] |
| V. | | |
| NICHOLAS WINDLE | | HONORABLE THOMAS LYNN WILLIAMS, JUDGE |
| | APPELLEE | |
| | | APPEAL DISMISSED WITHOUT PREJUDICE |

**STEPHANIE POTTER BARRETT, Judge**

Appellant Hope Chantel filed a pro se appeal from a Garland County Circuit Court ex parte emergency custody order transferring custody of her two minor children to their father, appellee Nicholas Windle. In this pro se appeal, Chantel makes twelve arguments for reversal, contending the circuit court erred by (1) demonstrating judicial bias; (2) failing to properly apply Arkansas residency requirements; (3) relying on prejudicial and unverified evidence; (4) ignoring the best interest of the children; (5) issuing an emergency custody order without strict proof of immediate danger; (6) stripping her parental rights without clear and convincing evidence; (7) failing to address fraud and misrepresentation; (8) imposing undue financial burdens on her; (9) violating her Due Process and Equal Protection rights under the Fifth and Fourteenth Amendments; (10) enabling coercive control and financial

1

abuse with punitive rulings; (11) ignoring an ongoing Arkansas State Police investigation; and (12) misapplying estoppel. However, we cannot reach the merits of this case for lack of a final, appealable order. We must, therefore, dismiss this appeal without prejudice.

On November 24, 2020, Windle filed a complaint for divorce against Chantel. Windle's complaint established that the pair were married on April 13, 2012, and two children were born from that marriage. Windle and Chantel lived together until on or about November 1, 2020, when they separated.

On December 1, Windle filed an ex parte petition for an order of protection against Chantel. The petition alleged Chantel was "mentally unstable and a danger to [Windle], the minor children, and herself." Windle attached an affidavit to his petition in which he described Chantel's threatening to kill him on multiple occasions, threatening to burn his home down, and threatening to have him fired from his job. Windle asserted Chantel told him, "The kids are going to see their mother in prison," and "they won't have either one of us in their lives." Finally, Windle suggested Chantel has an undiagnosed mental-health disorder, stating Chantel admitted to visual hallucinations and seeing demons.

On December 2, an ex parte temporary order of protection was filed, granting Windle's request for a temporary order of protection. On December 23, a permanent order of protection was filed. The order stated Windle presented sufficient evidence to show he was in immediate fear of domestic abuse and granted the order of protection for one year, expiring December 8, 2021. On December 28, Chantel filed her answer and counterclaim for divorce.

On July 30, 2021, the decree of divorce was entered. The decree awarded Windel primary custody of the minor children, with Chantel receiving alternating-weekend visitation from Friday at 7:00 p.m. until Sunday at 4:00 p.m. The decree also ordered Chantel to pay $344.64 in child support each month.

On April 13, 2023, Windle filed a verified motion for contempt. In his motion, Windle asserted that on various occasions, Chantel had refused to return the children to him and indicated she intended to continue this behavior "every single time" she had the children. The motion further asserted Chantel had refused to contribute financially to costs for the children and kept the children out of school.

On May 24, Chantel filed a motion for contempt against Windle; a motion to modify custody or, in the alternative, to modify visitation and provisions related to the minor children; and a motion for appointment of attorney ad litem. In Chantel's motion, she asserted Windle would take the children to the doctor or dentist and not inform her until weeks later; Windle refused to keep her informed of activities at the children's school; and Windle allowed his oldest child, not born of their marriage, to speak negatively to Chantel in front of the minor children. In her motion to modify custody, Chantel argued that since the entry of the decree of divorce, there had been a material change in circumstances that warranted a modification. Chantel asserted the material change in circumstances included (1) Windle telling the male minor child that he does not have to listen to women because they are beneath him; (2) Windle teaching the minor children that Black people are bad;

and (3) that Windle told her if she lived closer, he would be agreeable to joint custody, but he went back on his word after she relocated to Garland County.

On June 5, Windle filed a motion to dismiss Chantel's motion to modify custody. In his motion to dismiss, Windle denied all of Chantel's allegations. He further argued that even if true, Chantel's allegations did not amount to a material change of circumstances sufficient to warrant modification of the existing custody and visitation schedule. On June 29, the court entered an order denying Windle's motion to dismiss Chantel's motion to modify custody. On February 21, 2024, Chantel filed a motion to withdraw her motion to modify custody. On February 22, the court entered an order granting Chantel's motion to withdraw and her motion to modify custody.

On June 4, 2024, a hearing was held on both parties' motions for contempt. On June 25, an order effectuating the court's ruling was entered. The order dismissed Chantel's motion for contempt with prejudice, found Chantel in contempt for her failure to return the minor children to Windle on three separate occasions, and sentenced Chantel to suspended concurrent sentences of ten days in the Garland County Detention Center for each of the three occurrences. The order also awarded Windle a judgment for $419.60 as reimbursement of Chantel's one-half of the minor child's unpaid and uncovered medical expenses; found Chantel's income had substantially changed and increased her monthly child support to $562.00 a month; awarded Windle a judgment in the amount of $2,825.68 for Chantel's unpaid child support for the thirteen months the case had been pending; and awarded Windle attorney's fees and costs in the amount of $6,303.62.

On December 9, Windle filed a verified ex parte motion for emergency return of the children, immediate suspension of visitation, and for contempt. Windle asserted that since the entry of the last order, Chantel had engaged in a pattern of intentional and reckless behavior, again refusing to return the children to Windle. Additionally, Windle asserted Chantel refused to pay any amount of back child support, attorney's fees, or the adjusted child-support amount. That same day, the circuit court entered an emergency order suspending and restricting all visitation between Chantel and the minor children and set the matter for a hearing on December 19.

At the December 19 hearing, Chantel appeared pro se. The court ensured Chantel was aware of her right to counsel and the role the court would and would not play during the hearing if Chantel chose to proceed pro se. Chantel acknowledged the court's concerns and chose to proceed without counsel. Windle had the opportunity to testify to the contents of his motion and Chantel's contempt in regard to visitation and custody. Windle testified that around Thanksgiving, the issues between him and Chantel reignited, with Chantel's continued refusal to return the children to Windle at the ordered time. Windle testified to several text messages between him and Chantel in which he informed her that she was in contempt of the court order; he said Chantel had an "I don't care attitude."

Windle further testified the Hot Springs Village Police Department had become involved with retrieving the children after the court entered the ex parte order. Windle provided Chantel's address to the officers and met them there. Windle testified the officers told him to park at the end of the street, and once contact with Chantel was established, he

5

could pick up the children. When Windle pulled into the driveway to get the children, he could "hear her in the back of the police car screaming and banging on the windows and them, of course, the kids came out and I got them calmed down and we went home." Windle testified to the other examples of Chantel's contempt, including her refusal to pay the newly amended child-support amount, Windle's attorney's fees, and other monetary obligations that were previously ordered.

During cross-examination, Chantel asked Windle to provide the details of their visitation schedule. During this line of questioning, the court informed Chantel that her reading of the visitation schedule was incorrect. Several times during cross-examination, Chantel was told to move on because she was asking questions outside the scope of direct examination or veering into topics that were not relevant to the issue before the court.

Windle's counsel then called Chantel to testify. Chantel was questioned about text messages she exchanged with Windle on several occasions in which she refused to return the children at the time ordered by the court. When asked about the time the Hot Springs Police Department had to retrieve the children, she testified that although the officer's report stated she told officers she would not return the children to Windle, that was not true. She further denied all allegations concerning her behavior from that night.

Chantel then testified in her own defense, stating she never refused to return the children or argued with police, and she believed her behavior was in the best interest of the children because she was afraid for them. Chantel stated she never intentionally violated the court's order. She further testified she is "not a combative person" and only wanted the

6

right to raise her children.  She testified that Windle sets up scenarios to make her seem disagreeable.

At the conclusion of the hearing, the court stated there would be a final hearing on visitation and contempt at a later date and reiterated the hearing was only to determine if there were sufficient facts to suspend visitation between now and that final hearing.  The court expressed concern about Chantel's ability to comply with court orders and found it was in the best interest of the children to suspend Chantel's visitation.

On January 2, 2025, the circuit court entered a temporary order extending the suspension and restriction of Chantel's visitation until a final hearing on the matter could be held to determine the best interest of the minor children.

Before addressing the merits of Chantel's claims on appeal, we must first analyze whether Chantel appeals from a final order.  Rule 2(a)(1) of the Arkansas Rules of Appellate Procedure–Civil provides that an appeal may be taken only from a final judgment or decree entered by the circuit court.  Final orders of custody are specifically appealable under Rule 2(d).  Whether a custody order is final or temporary is not dependent on the style of the order.  Indeed, both the supreme court and this court have consistently held that custody orders styled as temporary may be nonetheless final for purposes of appeal if the issue of custody was decided on the merits and the parties have completed their proof.  *See Sandlin v. Sandlin*, 290 Ark. 366, 719 S.W.2d 433 (1986); *Chancellor v. Chancellor*, 282 Ark. 227, 667 S.W.2d 950 (1984); *Jones v. Jones*, 41 Ark. App. 146, 852 S.W.2d 325 (1993).

We conclude that the order appealed from in this case is not a final custody order. That order provides that Chantel's visitation is "suspended and restricted effective immediately" while also setting a new hearing date of December 19. At the conclusion of that hearing, the court stated, "At this point, I find in the best interest of the children that I will continue my order in regard to suspending the visitation with the mother of these children until such time that we have a final order of this case." On January 2, 2025, a temporary order from the December 19 hearing was filed, which continued the suspension and restriction of Chantel's visitation until the final hearing, which still has not taken place. Taken together, the language of the emergency order, the circuit court's remarks from the bench, and the January 2 order demonstrate that the issue of custody has yet to be determined on its merits, and the parties have not completed their proof on the issue. Accordingly, the order appealed from is not final under Rule 2(d), and we must dismiss the appeal without prejudice.

Appeal dismissed without prejudice.

THYER and WOOD, JJ., agree.

*Hope Chantel*, pro se appellant.

One brief only.